UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WADE CHILTON,

    Plaintiff,

v.

ROBERT BOSCH FUEL SYSTEMS, LLC,
and ROBERT BOSCH FUEL SYSTEMS,
LLC HOURLY-RATED EMPLOYEES
PENSION PLAN,

    Defendants.
_____/

Case No. 1:16-CV-891

HON. GORDON J. QUIST

Consolidated with Nos.
1:16-CV-945, 1:16-CV-947,
1:16-CV-949, 1:16-CV-958,
1:16-CV-964, and 1:16-CV-971

## **OPINION**

Plaintiffs in these consolidated cases are participants and beneficiaries under the Robert Bosch Fuel Systems LLC Hourly-Rated Employees' Pension Plan (the Bosch Plan). Plaintiffs have sued the Bosch Plan and Defendant Robert Bosch Fuel Systems, LLC (Bosch), the Bosch Plan sponsor and administrator, pursuant to Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, alleging that they are entitled to enhanced early retirement pension benefits under the Bosch Plan.

In their original complaints, Plaintiffs alleged that Defendants are equitably estopped from denying them an enhanced early retirement benefit under the Bosch Plan. Defendants moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Plaintiffs amended their complaints to, among other things, add a second claim for other equitable relief. Defendants have again moved to dismiss Plaintiffs' complaints pursuant to Rule 12(b)(6). The motions are fully briefed and ready for decision.

For the following reasons, the Court will grant Defendants' motions and dismiss Plaintiffs' first amended complaints.

## I. BACKGROUND

Plaintiffs, Wade Chilton, Cynthia K. Doubblestien, Tamara L. Baker, Dawn Hess, Charles R. Buxton, Max Guy, and Stephen Tenharmsel, are former employees of Bosch, and all of them retired from a General Motors-affiliated company on August 1, 2009. Plaintiffs are all participants in the Bosch Plan, which is administered by Bosch and governed by ERISA. It is undisputed that Plaintiffs are entitled to regular pension benefits under the Bosch Plan (ECF No. 21 at PageID.278); however, Plaintiffs seek enhanced early retirement benefits under the Bosch Plan. Because Plaintiffs' factual allegations in their respective first amended complaints are materially the same, the Court recites Plaintiff Chilton's allegations as representative of all Plaintiffs' allegations.

Chilton worked for GM between 1977 and 1988, then worked for Diesel Technology Company (DTC) and its successor, Bosch, until 2003. (ECF No. 11 at PageID.141.) Chilton left Bosch in October 2003 and returned to a GM-affiliated company, where he remained until he retired on August 1, 2009. (*Id.*) During Chilton's employment with DTC, Bosch assumed DTC's Hourly-Rate Employees' Pension Plan and subsequently renamed it the Bosch Plan. (*Id.* at PageID.142.) Certain benefits under the Bosch Plan were coordinated with benefits under GM's Hourly-Rated Employees' Pension Plan (GM Plan).

In 2009, Bosch transferred benefits liability and associated assets for certain Bosch employees to the GM Plan. (*Id.*) At the same time, GM offered an early retirement program to certain of its employees and former employees in the form of an enhanced early retirement benefit, to be effective August 1, 2009. Bosch also offered enhanced early retirement pension benefits to Chilton and other participants in the Bosch Plan. (*Id.*)

Chilton elected to retire from GM on August 1, 2009, and receive enhanced early retirement benefits under the Bosch Plan. In connection with his retirement, Bosch and Chilton executed

2

various documents stating that Chilton had applied for retirement benefits to commence August 1, 2009, that such benefits were "[e]arly retirement at employee option with 30 or more years of combined Bosch (DTC)/GM/Delphi credited service," and that Chilton would receive monthly benefit payments of $1,227.86 until age 62 and one month, or until he began receiving Social Security Disability benefits, and $636.73 per month thereafter. (*Id.* at PageID.142–43; ECF Nos. 11-2– 11–6.) Chilton alleges that Bosch never stated that the enhanced early retirement benefit was subject to reduction by Bosch at a later time, that the benefit was contingent upon Bosch's relationship with GM, or that Bosch might cease paying the benefit to him altogether. (ECF No. 11 at PageID.144.)

Bosch began paying Chilton the stated monthly benefit as of August 1, 2009, and continued the payments for over three years, until November 2012, when Bosch sent Chilton a letter stating that he was no longer eligible for a "coordinated" pension benefit and that his monthly benefit was recalculated as a deferred vested participant. (*Id.* at PageID. 144–45; ECF No. 11-8.) Bosch also informed Chilton that he owed Bosch $50,342.46 for overpayments the Bosch Plan had made to him. Bosch ceased making monthly payments to Chilton and apparently is applying some portion of the monthly payment to which Chilton would otherwise be entitled as repayment of the alleged overpayment. (ECF No. 11 at PageID.145.)

Chilton filed an appeal of the termination of his monthly payments with Bosch, but Bosch denied the appeal. Chilton then filed the instant action.

## II. DISCUSSION

### A. Equitable Estoppel

Pursuant to the Bosch Plan, a participant may be entitled to an enhanced early retirement benefit under the following circumstances:

3

> If the Employee retires under Section 2.2 [early retirement] or Section 2.3 [total and permanent disability retirement] with 30 or more years of credited service at the date of retirement, she or he shall be entitled to a monthly early retirement supplement until Age 62 and One month in an amount which when added to the monthly pension under this Plan will equal the amount of total monthly benefit applicable to the Employee as provided in the tables set forth below . . . .

(ECF No. 11-1 at PageID.165, § 2.6(a)(1).) Recognizing that they lack 30 or more years of credited service with Bosch and that they are thus not entitled to an enhanced early retirement benefit under the terms of the Plan, Plaintiffs allege that Defendants are equitably estopped from denying them an enhanced early retirement benefit under the Bosch Plan based on their combined years of service with Bosch/DTC and GM and its affiliate, Delphi.

An equitable estoppel claim arises under the body of federal common law developed under ERISA. *Trs. of the Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 n.2 (6th Cir. 2000). The Sixth Circuit has recognized that a common law equitable estoppel claim may be asserted in the context of an ERISA-governed pension plan. In all cases in which estoppel is asserted, a plaintiff must establish the following elements of a traditional equitable estoppel claim:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010). In addition, if the pension plan is unambiguous, the plaintiff must show "(1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *Id.* at 444; *see also Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 274 (6th Cir. 2016) ("Because the Plan is ambiguous, we need not analyze the three elements under the heightened standard.").

In their initial motion to dismiss, Defendants argued that Plaintiffs' equitable estoppel claims failed because the alleged misrepresentations in the documents attached to Plaintiffs' complaints, upon which Plaintiffs alleged they relied in deciding to retire, were made several months after Plaintiffs actually retired, making it impossible for Plaintiffs to have relied upon the alleged misrepresentations. (*See*, *e.g.*, Case No. 1:16-CV-891, ECF No. 10 at PageID.133.) In response to Defendants' motions, Plaintiffs amended their complaints to add allegations that: (1) Bosch's "apparent agent" made written and verbal representations to Plaintiffs prior to August 1, 2009 (Plaintiffs' retirement date); (2) Plaintiffs relied on Defendants' representations in making financial and life decisions after they retired; and (3) the Bosch Plan is ambiguous. (*See, e.g.*, Case No. 1:16-CV-891 at PageID.142 at ¶ 19, 144 at ¶ 29, 146 at ¶ 45, 147–48 at ¶¶ 53, 62.)

1. **Unambiguous Plan**

Defendants argue that Plaintiffs' amended complaint suffers from the same defect as their original complaint—Plaintiffs cannot show that, in making their decisions to retire, they relied on the retirement documents attached to their complaints because those alleged misrepresentations were made months after Plaintiffs made their decisions to retire. Defendants further argue that Plaintiffs' allegations about certain unidentified "verbal" and "written" misrepresentations by Bosch's "apparent agent" prior to the date Plaintiffs retired cannot cure Plaintiffs' prior pleading deficiencies because Plaintiffs provide no factual details about the alleged written misrepresentation, including its content, the date it was made, and who made it. Defendants further argue that, because equitable estoppel claims require an element of fraud, Plaintiffs' allegations about written and verbal representations made prior to August 1, 2009, fail to comply with Rule 9(b)'s particularity requirement. Plaintiffs respond that they have sufficiently alleged all of the traditional elements of an estoppel claim, as well as the heightened pleading requirements for an unambiguous pension plan set forth in *Bloemker*. Plaintiffs further argue that they are alleging reliance based not only on their

5

decisions to retire, but also "in the form of life and financial decisions made in reliance on the continued receipt of the promised enhanced early retirement benefits." (ECF No. 22 at PageID.302 n.6.)

The documents attached to Plaintiffs' complaints—executed after Plaintiffs retired—show that Plaintiffs could not have relied on them in deciding to retire. Plaintiffs do not contend otherwise. Plaintiffs' allegations that an "apparent agent" of Bosch made a written statement to Plaintiffs prior to August 1, 2009, that they were eligible for an enhanced early retirement benefit under the Bosch Plan are insufficient to support Plaintiffs' claims. Because a plaintiff asserting an estoppel claim must allege that a defendant's actions "contain an element of fraud, either intended deception or such gross negligence as to amount to a constructive fraud," *Bloemker*, 605 F.3d at 443 (alteration and internal quotation marks omitted), a plaintiff must satisfy Rule 9(b)'s pleading requirements. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 553 (6th Cir. 2012) (noting that the plaintiffs failed to plead their estoppel claim "with particularity"). Among other things, Plaintiffs fail to allege who made the statement, when it was made, and its content.

In an effort to shore up their amended complaints, Plaintiffs attach various written documents to their response, including a 1988 Memorandum of Understanding between GM and the UAW "Regarding Pension and Other Matters Pertaining to Employes [sic] of AC Rochester - Grand Rapids, Michigan Offered Employment at Diesel Technology Corporation"; copies of a November 1, 2006, letter to Plaintiffs Tenharmsel, Baker, and Buxton from a union benefits representative, and a "30 & Out" pension benefit estimate for Plaintiff Chilton. The Court will not consider these documents because "it is axiomatic that a plaintiff may not amend his complaint through allegations made in a response to a motion to dismiss." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *8 (E.D. Mich. Oct. 29, 2014) (citing *Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003)); *see also Becton v. Corrections Corp. of Am.*, No. 3:16-2282, 2017 WL 1461632, at

*2 (M.D. Tenn. Mar. 28, 2017) ("Generally, a plaintiff may not amend his complaint by adding factual allegations as a part of a response in opposition to a motion to dismiss."). Moreover, the documents Plaintiffs cite do not support a claim that Plaintiffs reasonably relied on a statement to them by Defendants. The Memorandum of Understanding was between GM and the union and was executed decades before Plaintiffs made their decisions to retire, and the remaining documents were from the union, not Defendants. Thus, they do not contain misrepresentations by Defendants to Plaintiffs.

Finally, Plaintiffs argue that, even if they cannot allege reliance on written representations in making their retirement decisions, they have sufficiently alleged that they relied on the continued receipt of enhanced early retirement benefits in making "life and financial decisions." This argument fails because the payment of a benefit, without more, is not a representation that benefits will continue beyond the current payment being made. Moreover, Plaintiffs' bare assertions of "life" and "financial" decisions are insufficient to plead reliance with the particularity required by Rule 9(b).

Therefore, Plaintiffs fail to an estoppel claim based on an unambiguous pension plan.

### 2. Ambiguous Plan

Plaintiffs' estoppel claim based on an ambiguous plan fails as well. First, although Plaintiffs allege that "[t]he Bosch Plan was ambiguous making it impossible for [them] to determine [their] eligibility for benefits and the amount thereof solely by reference to the Bosch Plan," (ECF No. 11 at PageID.148), Plaintiffs do not allege how the Bosch Plan is ambiguous with regard to the particular issue germane to their claims—whether GM years of service count towards eligibility for the enhanced early retirement benefit under the Plan. The Bosch Plan is unambiguous, *i.e.*, 30 years of service with Bosch are required for an enhanced early retirement benefit. Second, Plaintiffs' claims fail on the reliance element. As noted, Plaintiffs cannot show that they reasonably relied on

the representations in the documents attached to their complaints in making their retirement decisions. In addition, contrary to Plaintiffs' argument, an estoppel claim based on an ambiguous pension plan is subject to Rule 9(b)'s particularity requirements because a traditional estoppel claim still requires that the defendant's actions contain an element of fraud. *Cataldo*, 676 F.3d at 553. Thus, Plaintiffs cannot rely on their unadorned allegations of written or verbal representations by Bosch's "apparent agent" to establish their estoppel claim. Third, Plaintiffs cannot rely on the declarations attached to their response to Defendants' motion to dismiss to fill in the missing details of their amended complaints. *See Cole v. Mauldin*, No. 14-11325, 2015 WL 806908, at *6 (E.D. Mich. Feb. 26, 2015) (stating that the plaintiff "may not attempt to amend her complaint through a response to a motion to dismiss, and affidavits attached to briefs may not properly be considered at the motion to dismiss stage"). Finally, even if the Court could consider Plaintiffs' declarations, they still do not show verbal statements made by an agent of Bosch. Instead, the statements were made by their own union representatives, not by agents of Bosch. The case Plaintiffs cite, *Rees v. Iron Workers' Local No. 25 Pension Fund*, 141 F. Supp. 2d 742 (E.D. Mich. 2015), is distinguishable from the instant case because the union representative in *Rees* was a union-representative trustee of the pension fund. *See id.* at 747–48. There is no indication here that the union representatives Plaintiffs identify were also trustees of the Bosch Plan.

**B.     Other Equitable Relief**

Plaintiffs allege a claim in Count II for "other equitable relief." In this count, Plaintiffs allege that they are entitled to the equitable remedies of reformation of the Bosch Plan, surcharge, an injunction, and "such other and further equitable relief as the Court deems appropriate under the circumstances." Defendants argue that this count is subject to dismissal because it does not state a separate claim that differs from the equitable estoppel claim in Count I. Citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 131 S. Ct. 1866 (2011), Plaintiffs argue that the Supreme Court has

8

recognized that the equitable remedies of surcharge and reformation are available under § 502(a)(3) of ERISA, without a showing of detrimental reliance. Even so, the Court did not hold that hold that a court may impose such remedies at its own whim without a legally sufficient basis. For example, the Court noted that while detrimental reliance is not a prerequisite to the remedy of "surcharge," some showing of harm—"from the loss of a right protected by ERISA or its trust-law antecedents"—is required. *Id.* at 444, 131 S. Ct. at 1881. In the instant case, Plaintiffs recite different forms of equitable remedies without alleging a factual basis for such remedies. These allegations fail to state a claim under the *Twombly*/*Iqbal* pleading standard. Accordingly, Plaintiffs' claim for "other equitable relief" set forth in Count II will be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.

Orders consistent with this Opinion will enter in each of these consolidated cases.

Dated: June 9, 2017　　　　　　　　　　　　　　　/s/ Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　　　GORDON J. QUIST
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE